## MOUTON v. W. J. TALBOT & SON et al.
### No. 1480.

Court of Appeal of Louisiana. First Circuit.

June 14, 1935.

Mouton & Davidson, of Lafayette, for appellants.

Welton P. Mouton, of Lafayette, for appellee.

DORE, Judge.

This is a suit for damages claimed by the plaintiff as the result of his running into the rear end of the truck of the defendant while the same was on the "Old Spanish Trail" Highway, near the western corporate limits of the city of Lafayette. There was judgment for plaintiff for the sum of $110, and defendant has appealed. The plaintiff has answered the appeal, praying for an increase.

The accident happened on September 10, 1934, at about 8 p. m., and at the situs of the accident the highway is leveled straight for quite a distance, and has a concrete slab of 18 feet, with a black strip in the center, with dirt shoulders of about 5 feet on each side.

We gather from the evidence that it had been raining prior to, at the time of, and after the accident. Some 15 minutes prior to the accident complained of in this suit, the defendant met with an accident by running into another truck. By this first accident the truck in question was disabled, and could not be moved by its own power. The defendant in charge of his truck attempted to remove the truck from the highway and partly succeeded, the position of the truck then being somewhat in an angular way, the rear part of the trailer extending past a few inches from the center line of the paved highway on its left, with the engine facing Lafayette; immediately after, the defendant perceiving that he was unable to clear the right traffic lane to a sufficient extent for persons using the said highway from Scott to Lafayette, stationed a guard some 50 to 60 feet behind the truck in order to warn the traffic; the clearance lights on his truck were on, but we doubt seriously as to his tail-light being in order. Plaintiff was on his way to Lafayette, driving in the rain, with dim lights, at approximately a speed of 25 miles an hour. Upon reaching the guard, he did not slow down nor stop, but contends that he saw the truck and guard at the same time, and could not avert the accident.

The question for this court to determine is the proximate cause of the accident.

Act No. 21 of 1932 provides amongst other provisions: Title 2, § 3, rule 4 (a) is to the effect that no person shall drive or operate a motor vehicle other than at a careful, prudent, and proper speed with due regard to the traffic, surface, and width of the highway, together with the conditions and circumstances, and in such a way as will not endanger the life, limb, or property of any other person.

Same title, same section, rule 15 provides: That any person shall not park nor leave

standing any motor vehicle standing upon any highway of this state unless there be a clearance of at least 15 feet upon the main-traveled portion for free passage, nor unless a clear view of such vehicle shall be obtained from a distance of 200 feet in each direction, and that the party leaving such vehicle, attended or unattended, shall display signs to warn the approaching traffic of such presence. And the same rule also provides that the same shall not apply to a disabled vehicle, but with the provision (subdivision (c) that "It shall be the duty of the owner or driver of any such vehicle to remove the same as soon as possible and until removed to protect traffic from same at his responsibility."

. On the question of the negligence of defendant, it is undisputed that just a few moments prior to this accident, some say as much as 15 minutes, that defendant met with an accident by running into another truck. This accident caused the defendant's truck to be in an angular position. The defendant Travis and his helper testified, uncontradicted, that they did all they could to remove and clear the main-traveled portion of the highway, but to no avail; that, upon inspection, the truck could not be moved by its own power nor by human efforts, whereupon, defendant requested his companion to repair some 50 or 60 feet to the rear in order to warn the on-coming traffic. Abraham Landry testified, prior to reaching that point, he perceived the on-coming car of plaintiff, and that he stood in the lane of travel in the attempt to warn plaintiff. Plaintiff and his witnesses do not deny, but affirm, that Abraham attempted to warn him, but his excuse for not stopping is that Landry was but 12 feet from the truck, and that he saw Landry at the same time that he saw the truck, and without time to stop and avert the accident. His rate of speed in itself cannot be said to have been excessive. But plaintiff testifies that it was raining, and that his lights were dim.

As provided for in rule 4 (a), it was incumbent upon plaintiff to operate his automobile in a careful, prudent, and proper manner with due regard to the traffic, weather conditions, and circumstances. It was also incumbent upon him to have such lights as to be able to see a person for a distance of 200 feet.

His contention is that the proximate cause of this accident was the negligence of defendant in having his truck in the position in which it was without any rear light. On that score, we again state that the evidence is to the effect that the defendant had done all which was humanly possible in order to clear the traffic. The evidence is further to the effect that when he left Scott on his way to Lafayette all his lights, including the rear lights, were burning; it was due to the former accident that his rear light was not burning; nevertheless, he also attempted to safeguard the traffic. It must be remembered that only a few minutes elapsed from the first and second accident, and the truck of defendant was not parked in the true sense nor left unattended. Defendant's duty was to protect the traffic from his truck at his responsibility. This does not mean, however, that he is liable in all cases.

Admitting the negligence per se as provided for in the quoted paragraph of rule 15 of the said Act No. 21 of 1932, § 3, we find that the plaintiff was also negligent, and his negligence continued to the moment of the accident. He also violated provisions of Act No. 21 of 1932 as heretofore stated. He should have had sufficient lights as provided for in the act, and should have been traveling at such a rate of speed as to be able to stop his automobile within his vision. Had he been traveling in a careful and prudent manner, he should have seen Landry, the guard, posted by defendant, in time to avert the accident.

In the case of Sexton v. Stiles, 15 La. App. 148, at page 157, 130 So. 821, 827, the court says:

"The courts of this state have uniformly held that it is negligence per se for one to park a car on the highway without lights after dark, when an accident is caused by said failure. However, if the absence of the lights is not the proximate cause of the accident but same is brought about through the carelessness and recklessness and lack of precaution on the part of the one driving into the parked car, then the courts have refused to hold the owner of the parked car liable."

Again, quoting from same case, 15 La. App. 148, at page 158, 130 So. 821, 827:

"The absence of a tail-light from the truck was not the proximate cause of the accident; but the failure of the plaintiff to keep the proper lookout ahead was the cause of the accident."

In the case of O'Rourke v. McConaughey (La. App.) 157 So. 598, the court went at length into the discussion of the jurisprudence of this state dealing with automobile accidents of like kind and character as in the case at bar. In 157 So. 598, at page 606, after a thorough review of the cases on the subject-matter, it had this to say:

"The driver of an automobile has no right to assume that the road before him is open and to proceed ahead without regard to the safety of those who may be thereon."

It is therefore our conclusion that this collision was caused by the negligence of plaintiff, who should have been driving carefully and prudently, taking into consideration the weather condition, and should have had his car under such control as to stop immediately or within his vision, if necessary.

It is therefore ordered that the judgment appealed from be annulled, voided, and reversed, and that plaintiff's suit be dismissed at his costs in both courts.

LE BLANC, J., not participating.